# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN D. JACKSON, #33190-037 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. L-11-616 |
| VOLUNTEERS OF AMERICA CHESAPEAKE, INC. | * | |
| FEDERAL BUREAU OF PRISONS EMPLOYEE, MR. JONES | * | |
| DIRECTOR OF VOLUNTEERS OF AMERICA, JENNIFER MASSLIENO | * | |
| MS. KATHY HILL | * | |
| DIRECTOR OF CORRECTIONAL SERVICES, LINDA MOORE | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM

John D. Jackson ("Jackson"), a federal inmate, submitted correspondence to the Court on March 8, 2011, alleging that he was denied adequate medical treatment in violation of the Eighth Amendment. He requested injunctive relief and damages of $25 million. Jackson's claims raised serious questions about his immediate health, and the Court directed counsel to file an emergency show cause response. Jackson, who is proceeding <u>pro se</u>, also claimed that his First and Fifth Amendment rights were violated because, <u>inter alia</u>, the defendants have interfered with his right to seek redress for these grievances. In addition, Jackson raised negligence claims under the Federal Tort Claims Act.

Counsel for Defendants Linda Moore and Kirk Jones ("BOP Defendants") and Volunteers of America Chesapeake, Inc., Jennifer Masslieno, and Kathy Hill ("VOAC

Defendants) have filed separate dispositive motions.[1]  ECF Nos. 5 and 12.  Jackson has replied. ECF Nos. 10 and 11.[2]

For the following reasons, injunctive relief shall be DENIED.  The Motion to Dismiss filed by the VOAC Defendants (ECF No. 12) will be GRANTED.  The Motion to Dismiss filed by the BOP Defendants (ECF No. 5) will also be GRANTED IN PART.  The Court will afford Jackson sixty days to file any materials he deems pertinent to his claim of deliberate indifference. If he fails to file any materials in support of this claim, the BOP Defendants will be entitled to summary judgment.

### I.  BACKGROUND

Before turning to the merits of the pending Motions, the Court must deal with a procedural issue.  The BOP Defendants have not specified under what grounds they seek dismissal of Jackson's Complaint, and they have attached several exhibits and affidavits to their Motion.  When ruling on a motion to dismiss for failure to state a claim, the Court cannot consider matters outside the pleadings without converting the motion into one for summary judgment and giving the plaintiff a "reasonable opportunity" to present any material that he believes is pertinent.  See Fed. R. Civ. P. 12(d).[3]

This rule, however, does not apply to a motion for lack of jurisdiction under Rule 12(b)(1).  In considering a Rule 12(b)(1) motion, a district court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings

---

[1]  Linda Moore and Kirk Jones are employed by the BOP. Neither Moore nor Jones is assigned to oversee the BOP contract with VOAC.  ECF No. 4, Ex. 2 and 3.  Jennifer Masslieno is Program Director and Kathy Hill is Assistant Program Director of Resident Services for VOAC.

[2]  In accordance with Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), the Court notified Jackson of the dispositive pleadings and his opportunity to respond.  See ECF Nos. 8 and 13.

[3] The VOAC Defendants' Motion is brought under Rule 12(b)(6) and Rule 56.

without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "The district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.' " Evans, 166 F.3d at 647 (quoting Richmond, Fredericksburg & Potomac R., 945 F.2d at 768).

Jackson has also requested injunctive relief. A preliminary injunction is an extraordinary and drastic remedy. See Munaf v. Geren, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, Jackson must demonstrate that: 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008); Real Truth About Obama, Inc. v. Federal Election Commission, 575 F.3d 342, 346 (4th Cir. 2009). In ruling on a motion for a preliminary injunction, the Court may consider evidence outside of the pleadings, including affidavits and other exhibits. See, e.g., Sims v. Greene, 161 F.2d 87 (3d Cir. 1947).

### A. Jackson's Medical Care

Jackson is a federal inmate at VOAC, a residential reentry center ("RRC") in Baltimore City that contracts with the Federal Bureau of Prisons ("BOP") to house, assist and supervise federal prisoners as they transition back into the community. Jackson was designated to VOAC on February 4, 2011, and is scheduled for release on July 22, 2011.

While confined at the Federal Correctional Institution at Schuykill, Jackson had surgery and was treated for glaucoma.[4] ECF No. 5, Exhibit 1, ¶ 8. Jackson's assignment to the VOAC was made after BOP staff determined that his medical needs did not require his continued incarceration at a BOP facility, but could be met at a RRC. ECF No. 5, Exhibit 1, Declaration of John Mellendick, Community Corrections Contract Oversight Specialist, ¶¶ 6-7; see also ECF No. 10, Exhibit A, B and D (Plaintiff's ARP requesting RRC placement ).[5]

Inmates in residential re-entry programs are expected to move toward financial self-sufficiency. To this end, each is responsible for arranging and financing his own routine medical care costs, except for extraordinary or emergency medical expenses. See id., ¶ 11. At VOAC, Jackson met with a review team to assess his medical needs and developed an Individual Program Plan. ECF No. 12, Exhibit A at ¶ 6. The Individual Program Plan noted that he suffers from glaucoma and uveitis[6] and requires eye drops multiple times per day. See id.

Pursuant to the Individual Program Plan, Jackson agreed to register at Healthcare for the Homeless ("HCH"), a not-for-profit medical treatment facility to which VOAC refers individuals, such as Jackson, who do not have medical insurance and cannot afford medical treatment. See id. Jackson was advised that he may see an ophthalmologist, but must pay for the

---

[4] Glaucoma is a group of diseases that damages the eye's optic nerve and can result in vision loss and blindness. Damage occurs due to increased fluid pressure inside the eyes. See National Eye Institute, http://nihseniorhealth.gov/glaucoma/glaucomadefined/01.html.

[5] Inmates with minor medical conditions are considered for RRC placement. If an inmate has a serious medical condition that cannot be adequately addressed by community healthcare providers, the inmate is not an appropriate candidate for RRC placement and instead serves the term of incarceration in a BOP institution where the condition is treated. ECF No. 5, Exhibit 1, ¶¶ 6 and 7.

[6] Uveitis is swelling and irritation of the uvea, the middle layer of the eye. The uvea provides most of the blood supply to the retina. http://www.nlm.nih.gov/medlineplus/ency/article

visit. ECF No. 5, Exhibit 1, § 12, Declaration of John Mellendick, BOP Community Corrections Contract Oversight Specialist.

On February 9, 2011, Jackson was evaluated at HCH by Ramin Mazhari, M.D. ECF No. 12, Exhibit A at ¶ 7. Dr. Mazhari referred Jackson to Mercy Hospital for x-rays and evaluation of his sarcoidosis.[7] On February 15, 2011, Jackson was seen at Mercy Hospital. Id. Exhibit A at ¶¶ 7-12 and Exhibit 2.

Jackson went to HCH for follow-up appointments on March 23 and March 25, 2011. ECF No. 6, Exhibit A at ¶ 11. Jackson's vision was checked during his March 25, 2011 appointment. ECF No. 6, Attachment D. That same day, Dr. Mazhari referred Jackson again to Mercy Hospital for an additional CT Scan for treatment of sarcoidosis. Another appointment with Dr. Mazhari at HCH was scheduled on April 21, 2011. The CT scan was scheduled for April 15, 2011.

### B. Administrative Procedure Requests

Jackson claims on February 26, 2011, he submitted a written complaint to Jennifer Masslieno concerning his living conditions. Complaint ¶ 1. He asserts that Linda Moore "was not incline[d] to provide" the forms to him. Complaint ¶ 23.

On February 25, 2011, Jackson filed Remedy ID No. 628255-RI to the BOP Regional Office in which he requested an appointment with a specialist for his eye condition. The request was denied on February 28, 2011, because Jackson failed to file his remedy request first with the institution (i.e., RRC) on a BP-9 form. Although Jackson was instructed to file his BP-9 form first at the institution, then to file a BP-10 form at Regional Office within 20 days after receiving

---

[7] Sarcoidosis is a disease in which swelling occurs in the lymph nodes, lungs, liver, eyes, skin, or other tissues. PubMed Health http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001140/.

5

the institution response, Jackson failed to file either form. ECF No. 5, Attachment 4B. On March 1, 2011, Jackson submitted ARP Remedy ID No. 629322-R1 to the BOP Regional Office, claiming that staff were not providing him with ARP forms. This request was denied because Jackson failed to follow the requisite procedures. See id., Attachment C.[8]

The VOAC handbook sets forth the procedures for filing grievances. ECF No. 6. Attachment E, pp. 8-9. The grievance is filed first with the Director of the RRC, then with the President of the VOAC before it is submitted to the BOP. See id. Jackson was informed of the process when he was sent to the RRC. Id. at Attachment D (BOP Community Based Program Agreement signed by Jackson and dated November 26, 2010).

Linda Moore attests that she does not monitor the operations at VOAC. ECF No. 4, Exhibit 2, ¶ 3 (Declaration of Linda Moore). In her declaration, she states that Jackson never communicated to her that he was having difficulty receiving medical care for his eye condition or medical care in general or was unable to obtain BOP forms. See id. at ¶ 4. Further, she declares that Jackson never communicated to her that he was unable to obtain BOP administrative remedy forms at VOAC. Id. at ¶ 5.[9] Moore denies "ever attempting to hinder or interfere with Mr. Jackson's ability to submit administrative remedies either at the VOA[C] or to the Bureau." Id. at ¶ 8.

Kirk Jones is a BOP Community Corrections Contract Oversight Specialist. He is not assigned to oversee the BOP contract with the VOAC. ECF No. 5, Exhibit 3, ¶ 3 (Declaration of Kirk Jones). Jones attests that prior to the beginning of March 2011, when he spoke to Jackson

---

[8] Jackson has filed some 78 ARP requests throughout the course of his incarceration which suggests that he is knowledgeable about the process. See Exhibit 4, Declaration of Kevin Littlejohn, ¶ 3.
[9] Moore spoke to Jackson over the telephone in March of 2010 concerning attempts to informally resolve his complaint about restrictions on keeping food in his room. It bears noting that Jackson did not raise any concerns about his medical care during the phone call. ECF No. 5, Exhibit 2, ¶¶ 6 and 7.

about VOAC restrictions regarding keeping food in bedrooms, Jones had no contact or knowledge of Jackson. See id. Jones declares that when he spoke to Jackson, Jackson did not complain about eye care, medical care, or his ability to obtain BOP administrative remedy forms. Id. at ¶¶ 5-6.

John Mellendick, BOP Community Corrections Contract Oversight Specialist, is responsible for oversight of inmate issues arising at VOAC. ECF No. 5, Exhibit 1, ¶¶ 1-3. He attests that Jackson never complained about difficulty obtaining ARP forms or that VOAC staff failed to provide forms. See id., ¶ 16. Mellendick notes that his phone number, as well as those for other BOP community corrections staff members, is clearly posted at the VOAC, and it is "extremely common for Bureau inmates residing at RRCs, including the VOA[C], to call Bureau staff, such as myself, directly to try to resolve issues that arise at the RRC." Id. at ¶ 17.

**II.     DISCUSSION**

The pending Motions identify several defects in Jackson's Complaint. To the extent that the Court analyzes the Complaint for failure to state a claim, its analysis will be confined to the allegations set for therein. To the extent that the Court considers whether it has jurisdiction over the case and whether Jackson is entitled to injunctive relief, the Court will consider the record as a whole.

### A. Claims Against VOAC Defendants

#### 1. Federal Tort Claims Act

The Federal Tort Claims Act, 28 U.S.C. § 2671 et seq, waives the federal government's sovereign immunity for certain actions arising out of the alleged negligent act or omission of any employee or agent of a federal agency. See 28 U.S.C. § 1346(b). It can render the United States

7

liable "in the same manner and to the same extent as a private individual under like circumstances[.]" 28 U.S.C. § 2674. By its express terms, the FTCA does not provide for the liability of the United States for the acts or omissions of its independent contractors. See 28 U.S.C. § 2671; see Williams v. United States, 50 F.3d 299, 305 (4th Cir. 1995). VOAC is a private entity which contracts with the federal government; consequently, Jackson's Federal Tort Claims Act against VOAC and its employees Masslieno and Hill will be dismissed for lack of subject matter jurisdiction.

### 2. Bivens

Jackson's Complaint could also be construed as raising constitutional claims under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). A Bivens action may only be brought against federal officials for actions taken in their individual capacities. See id. In Correctional Services Corporation v. Malesko, 534 U.S. 61, 70 (2001), the Supreme Court specifically declined to extend the Bivens doctrine to a private corporation that, like VOAC, operated a half-way house for federal prisoners. See id. at 70-71(reasoning that extending Bivens to include suits against private corporate defendants would lead plaintiffs to focus collection efforts on corporate entities instead of the individuals directly responsible for the injury). Thus, Bivens does not provide a cause of action against VOAC employees Masslieno and Hill.[10]

---

[10] The Court notes, however, that Jackson might be able to pursue his claims under the VOAC employees under a state-law negligence theory.

### B. Claims Against the BOP Defendants

#### 1. Eighth Amendment Claim

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that a defendant's acts (or failures to act) amounted to deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. See Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer v. Brennan, 511 U. S. 825, 837 (1994).

Prison officials are entitled to rely upon the professional judgment of trained medical personnel. Miltier, 896 F.2d at 854; Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995). Thus, to establish deliberate indifference by non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. Miltier, 896 F.2d at 853.

Jackson is not entitled to injunctive relief. As a preliminary matter, the Court notes that Jackson has not submitted any materials in support of his motion. Further, under the facts discussed above, which are drawn from the Defendants' submissions, Jackson cannot meet the applicable burden.

Jackson was released to the RRC after he was determined medically ready. Further, Jackson was counseled and assisted in obtaining medical care at HCH. Jackson does not show denial of necessary medical treatment; he is receiving medical treatment at HCH during his residence at VOAC and has been referred for additional procedures as deemed necessary. Jackson fails to show a likelihood of success on the merits of his claims, irreparable harm without emergency injunctive relief, or how injunctive relief is in the public interest. Accordingly, emergency injunctive relief will be denied.

Although Jackson is not entitled to injunctive relief, the Court cannot dismiss his claim at this time. Under Rule 12(d), the Court must afford Jackson a reasonable opportunity to submit any materials he believes are pertinent on this issue.

### 2. Equal Protection

To the extent that Jackson invokes the Fourteenth Amendment's equal protect clause, he provides no factual predicate in support of his claim. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Thus, "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1982). To establish an equal protection violation, plaintiff must first demonstrate that he was "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination"; once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. See Arlington Heights v. Metropolitan. Housing Development Corp., 429 U.S. 252, 264–65 (1977); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). A plaintiff must set

forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003).

Insofar as Jackson asserts he is receiving medical treatment different than that provided to inmates inside BOP correctional facilities, he is clearly not similarly situated to those prisoners. Jackson is in a RRC transitioning toward release with the goal of self-sufficiency, including assuming responsibility for obtaining his own health care. Accordingly, his equal protection claim will be dismissed.

### 3. Federal Tort Claims Act

Jackson neither alleges, nor do the pleadings suggest, that he has presented his claims to the BOP as a prerequisite for filing a FTCA claim. A claim under the FTCA against the United States must first be presented to the appropriate agency within the two-year statute of limitations. See 28 U.S.C. § 2401(b). After the agency has denied the claim or failed to take action for six months, a plaintiff may file his claim in a district court. 28 U.S.C. § 2675(a). Accordingly, to the extent Jackson may raise a claim under the FTCA, it is dismissed without prejudice.

### 4. ARP Forms

Jackson also faults the Defendants for failing to provide him with administrative remedy forms beginning on February 15, 2011. This allegation is undermined by his filing of an ARP on February 25, 2011. Thus, ARP forms were unavailable to him for ten days at most. Other than his conclusory allegations, Jackson has not otherwise set forth an adequate basis for this claim. Accordingly, it will be dismissed.

## III. CONCLUSION

For the aforementioned reasons, the Court will deny injunctive relief. The VOAC Defendants' Motion to Dismiss will be GRANTED. The BOP Defendants' Motion to Dismiss will be GRANTED, except as to Jackson's claims under the Eighth Amendment. The Court will afford Jackson **60 days** to submit pertinent materials on this claim. If he fails to do so, the Court will grant summary judgment in favor of the BOP Defendants.

June 27, 2011                                                    /s/
                                                         _____
                                                         Benson Everett Legg
                                                         United States District Judge